IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ROD BLAGOJEVICH, Governor of the State of Illinois, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 05-3190 ) |
| DONALD RUMSFELD, Secretary of Defense of the United States, et al. | ) ) ) |
| Defendants. | ) ) |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Plaintiff Governor Rod Blagojevich's (Governor) Motion for a Temporary Restraining Order (d/e 24). The Defendants are U.S. Secretary of Defense Donald Rumsfeld (Secretary) and the members of the United States Base Closure and Realignment Commission (Commission). The Secretary recommended to the Commission that fifteen F-16 fighter planes currently assigned to the 183rd Fighter Wing of the Illinois Air National Guard, located in Springfield, Illinois, be realigned and transferred to a base in Indiana. The Secretary also recommended the relocation or removal of positions of 185 full-time

1

personnel and 452 part-time personnel of the 183red Fighter Wing. The Commission voted to approve the Secretary's recommendation. The Commission is currently preparing a report which will include its approval of the Secretary's recommendation regarding the realignment of the 183rd Fighter Wing. The Commission must submit that report to the President of the United States by September 8, 2005. The Governor claims that the realignment of the 183rd Fighter Wing may not occur without his consent, pursuant to 32 U.S.C. § 104(c) and 10 U.S.C. § 18238. The Governor asks this Court to restrain the Commission and the Secretary from transmitting to the President their recommendations regarding the realignment of the 183rd Fighter Wing.

The Supreme Court's decision in <u>Dalton v. Specter</u> compels this Court to conclude that the Governor has no standing to bring this action. <u>Dalton</u>, 511 U.S. 462 (1994). This Court, therefore, must dismiss this case for lack of subject matter jurisdiction.

This case arises from the current round of military base closings and realignments under the Defense Base Closure and Realignment Act of 1990 (Act). 104 Stat. 1808, as amended, note following 10 U.S.C. § 2687. Pursuant to the Act, the Secretary submitted his recommendations of base

closures and realignments to Congress and to the Commission. The Commission then held public hearings and voted on whether to accept or reject each of the Secretary's recommendations. The Commission approved the Secretary's recommendation for realignment of the 183rd Fighter Wing. The Commission must now prepare a report. The report will contain both an assessment of the Secretary's recommendation and the Commission's own recommendations for base closures and realignments. That report must be submitted to the President on or before September 8, 2005. 10 U.S.C. §§ 2912-2913.

The President must then approve or disapprove, in their entirety, all of the Commission's recommendations. If the President disapproves, the Commission must prepare a new report and submit it to the President. If the President again disapproves, no actions proposed in the Commission's recommendations will occur. If the President approves either the initial or the revised recommendations, the President must then submit the recommendations, along with his certification of approval, to Congress. Congress may, within forty-five days after receiving the President's certification, enact a joint resolution of disapproval. If the resolution of disapproval is passed, the Secretary may not carry out any of the

recommended closures or realignments; but, if the resolution of disapproval is not passed, the Secretary must carry out the recommended closures and realignments. 10 U.S.C. § 2913.

The 183rd Fighter Wing is part of the Illinois Air National Guard. As such, it is both a unit of a state National Guard and part of the larger National Guard of the United States. See Rendell v. Rumsfeld, 2005 WL 2050295(U.S. Dist. Ct. E.D.Pa., August 26, 2005) (detailed discussion of dual state-federal nature of the National Guard). The statutes defining the structure of this dual relationship give certain powers to the governors of the states. The Governor argues that two of these statutes, 10 U.S.C. § 18238, and 32 U.S.C. § 104(c), require the federal government to secure his consent before realigning the 183rd Fighter Wing.[1]

---

[1] Section 18238 states:

> A unit of the Army National Guard of the United States or the Air National Guard of the United States may not be relocated or withdrawn under this chapter without the consent of the governor of the State or, in the case of the District of Columbia, the commanding general of the National Guard of the District of Columbia.

Section 104(c) states:

> To secure a force the units of which when combined will form complete higher tactical units, the President may designate the units of the National Guard, by branch of the Army or organization of the Air Force, to be maintained in each State and Territory, Puerto Rico, and the District of Columbia. However, no change in the branch, organization, or allotment

The Governor notified the Secretary that he did not consent to the realignment of the 15 fighter planes and personnel. He argues that, as a result, the Secretary acted illegally in recommending the realignment of the 183rd Fighter Wing and the Commission acted illegally in approving that recommendation. He argues that those acts violated his rights as Governor of Illinois, and this Court should restrain the Secretary and the Commission from taking any further steps in violation of his rights.

Before considering the merits of the Governor's request, the Court must determine whether it has jurisdiction. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990). This Court only has jurisdiction over cases and controversies. U.S. Const. Article III. A case or controversy exists only if the Governor has standing to bring the claims he asserts. To establish standing, the Governor must allege that: (1) he has suffered an injury-in-fact that is concrete and actual or imminent, not conjectural or hypothetical; (2) a fairly traceable connection exists between the injury and the wrongful conduct; and (3) a likelihood exists that the requested relief will redress the alleged injury. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83,

---

of a unit located entirely within a State may be made without the approval of its governor.

103 (1998).

The Governor's allegations fail to show an injury-in-fact. The Governor alleges that the Secretary and the Commission have recommended a realignment that will violate the Governor's rights under § 104(c) and § 18238 by illegally realigning the 183rd Fighter Wing without his consent. The Secretary's recommendation and the Commission's report and recommendations, however, did not, and will not realign the 183rd Fighter Wing. The Supreme Court has determined that the recommendations of the Secretary and the Commission in the base closing process are only preliminary recommendations to the President that have no legal effect:

> The reports submitted by the Secretary and the Commission … "carr[y] no direct consequences" for base closings. The action that "will directly affect" the military bases is taken by the President, when he submits his certification of approval to Congress. Accordingly, the Secretary's and Commission's reports serve "more like a tentative recommendation than a final and binding determination."

Dalton, 511 U.S. at 469, quoting Franklin v. Massachusetts, 505 U.S. 788, 798 (1992) (internal citations omitted). Sections 104(c) and 18238 do not require these subordinates to secure gubernatorial consent before making tentative recommendations to the President about realignment of National Guard bases. Thus, the Governor's allegations fail to demonstrate that the

6

Secretary or the Commission have injured him, or will injure him, by making these tentative recommendations.

The Governor relies on the Supreme Court's decision in <u>Bennett v. Spear</u> for the proposition that preliminary opinions of federal agencies can cause an injury-in-fact. <u>Spear</u>, 520 U.S. 154 (1997). In that case, the U.S. Fish and Wildlife Service issued a Biological Opinion on the impact of the Klamath Irrigation Project (Project) on certain endangered species of fish. <u>Spear</u>, 520 U.S. at 159-60. The Bureau of Reclamation modified its operation of the Project as a result of the Biological Opinion. The plaintiffs were Oregon irrigation districts and ranchers that received water from the Project. The Supreme Court held that the plaintiffs in that case had standing to challenge the Biological Opinion because, by statute, the Biological Opinion had a direct impact on the legal regime that governed how the Bureau of Reclamation managed the Project. <u>Id.</u> at 178.

The Supreme Court, however, specifically stated that the situation before it in <u>Spear</u> was different from the base closing and realignment process under the Act. The Court stated that the Secretary and Commission's recommendations under the Act, "were in no way binding on the President, who had absolute discretion to accept or reject them." <u>Id.</u> at

7

178. The Court in Spear continued: "Unlike the reports in . . . Dalton, which were purely advisory and in no way affected the legal rights of the relevant actors, the Biological Opinion at issue here has direct and appreciable legal consequences." Id. The Spear decision, thus, does not help the Governor. Because the Supreme Court has decided that the Secretary and the Commission's recommendations to close a base in Dalton were "purely advisory" and "in no way affected the legal rights of the relevant actors," this Court must conclude that those recommendations in this case to realign the 183rd Fighter Wing have not, and will not, injure the Governor. He has no standing at this point to assert the claims he filed because the act of transmitting the recommendations will not cause an actual, concrete injury to the Governor.

The Governor also relies on the Rendell decision. This Court has reviewed the Rendell decision and respectfully disagrees with its interpretation of the Supreme Court's opinion in Dalton. This Court is convinced that the Dalton case dictates the conclusion that these preliminary recommendations by the Secretary and the Commission do not cause injury to the Governor. The President and Congress will decide whether any bases will be closed without the Governor's consent. The

Court therefore declines to follow the Rendell decision.[2]

Governor Blagojevich also argues that the decisions of the Secretary and of the Commission effectively strip him of his statutory right to withhold his consent to the realignment of the 183rd Fighter Wing. This is not completely true. He may notify the President and Congress that he withholds his consent. He will have no recourse, though, should they approve the realignment without his consent. The Supreme Court has ruled that the final decision of the President in exercising his discretion in this regard cannot be reviewed by the courts. Dalton, 511 U.S. at 476-77. This outcome may not be as harsh as it seems, though, because Governor Blagojevich is asserting only rights created by federal statute.[3] Those rights may be modified or eliminated at any time by Congress and the President. Arguably, the President and Congress have elected to modify the Governor's rights through the base realignment process created by the Act. Regardless, the Supreme Court has clearly determined that the recommendations of the Secretary and the Commission are tentative recommendations that do not

---

[2] The Governor also argues that the decision in Rendell should operate as collateral estoppel to preclude the Defendants from relitigating matters decided in that case. Standing, however, is a jurisdictional issue. Subject matter jurisdiction cannot be created by waiver or estoppel. Shaw v. Dow Brands, Inc., 994 F.2d 364, 371 (7th Cir. 1993).

[3] The Governor makes no constitutional claim.

affect anyone's legal rights, including the Governor's. The Governor, therefore, has not alleged an injury-in-fact and does not have standing.

THEREFORE, this action is dismissed for lack of subject matter jurisdiction. All pending motions are moot. The hearing on the Motion for Preliminary Injunction, previously scheduled for September 7, 2005, is canceled. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: September 6, 2005.

FOR THE COURT:

        s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE