IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ROD BLAGOJEVICH, Governor of the State of Illinois, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 05-3190 ) |
| ROBERT M. GATES, Secretary of Defendant of the United States of America; et al., | ) ) ) ) ) |
| Defendant. | ) |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on the Motion to Dismiss (d/e 60) filed by Defendants U.S. Secretary of Defense Robert M. Gates (Secretary) and the members of the United States Base Closure and Realignment Commission (Commission), and the Motion for Summary Judgment (d/e 63) filed by the Plaintiff Illinois Governor Rod Blagojevich (Governor). The Governor asks the Court to permanently enjoin the Secretary from implementing the final recommendation of the Commission to relocate fifteen F-16 fighter airplanes (Planes) currently assigned to the 183d Fighter

Wing of the Illinois Air National Guard (183d), located in Springfield, Illinois, to a base in Fort Wayne, Indiana. The Commission voted to approve the relocation of the Planes and transmitted those recommendations to the President. The President transmitted the recommendations to Congress. Congress did not act to reject the recommendations. The Governor claims that the relocation of the Planes and related personnel may not occur without his consent, pursuant to 32 U.S.C. § 104(c) and 10 U.S.C. § 18238.

This Court initially dismissed the action because the Court determined that the Governor lacked standing to bring this action. <u>Blagojevich v. Rumsfeld</u>, 385 F.Supp.2d 768 (C.D.Ill., 2005). On appeal, the Court of Appeals determined that the Governor had standing to bring the action. <u>Blagojevich v. Rumsfeld</u>, 202 Fed.Appx. 924, 2006 WL 3147365 (Nonprecedential Disposition November 1, 2006). The Court of Appeals vacated this Court's dismissal and remanded the case for further proceedings regarding all issues other than standing. <u>Id.</u>

The parties have now briefed this matter fully. For the reasons set forth below, the Secretary's Motion to Dismiss is ALLOWED, and the Governor's Motion for Summary Judgment is DENIED. The Governor's

action is barred by the sovereign immunity of the United States. This Court, therefore, lacks jurisdiction to order the Secretary to take the steps that would give the Governor the relief he seeks.

## STATEMENT OF FACTS

This case arises from the current round of military base closings and realignments under the Defense Base Closure and Realignment Act of 1990 (Act). 104 Stat. 1808, as amended, note following 10 U.S.C. § 2687. Pursuant to the Act, the Secretary submitted his recommendations for base closures and realignments to Congress and to the Commission. The Secretary recommended the following changes to the 183d: "Realign Capital Airport Air Guard Station, IL. Distribute the 183d Fighter Wing's F-16s to the 122d Fighter Wing, Fort Wayne International Airport Air Guard Station, IN, (15 aircraft) . . . Realign [parts of various other bases in Wisconsin, Iowa, Indiana, and Texas] . . . by relocating baselevel F-110 intermediate maintenance to Capital, establishing a Centralized Intermediate Repair Facility (CIRF) at Capital for F110 engines." 2005 Defense Base Closure and Realignment Commission Report to the President (2005 BRAC Commission Report), Vol. 1 at 128, available at http://www.brac.gov/finalreport.asp.

The Commission then held public hearings and voted on whether to accept or reject each of the Secretary's recommendations. The Commission modified the Secretary's recommendation for realignment of the 183d. The Commission recommended the following changes to the 183d:

> Realign Capital Airport Air Guard Station, IL. Distribute the 15 F-16 aircraft assigned to the 183d Fighter Wing, Capital Airport Air Guard Station, IL . . . to the 122d Fighter Wing, Fort Wayne International Airport Air Guard Station, IN, . . . .
>
> . . . .
>
> The Illinois ANG State Headquarters and the 217th Engineering Installation Squadron remain in place at Capital Airport Air Guard Station, IL.
>
> If the State of Illinois decides to change the organization, composition and location of the 183d Fighter Wing to integrate the unit into the Future Total Force, all personnel allotted to the 183d Fighter Wing, including the wing Expeditionary Combat Support (ECS) elements, will remain in place and assume a mission relevant to the security interests of the State of Illinois and consistent with the integration of the unit into the Future Total Force, including but not limited to the Centralized Intermediate Repair Facility (CIRF) at Capital for F110 engines, air mobility, C4ISR, Information Operations, engineering, flight training or unmanned aerial vehicles. Where appropriate, unit personnel will be retrained in skills relevant to the emerging mission.
>
> This recommendation does not effect a change to the authorized end-strength of the Illinois Air National Guard. . .
>
> . . . .

4

> Realign [parts of various other bases in Wisconsin, Iowa, Indiana, and Texas] . . . by relocating base-level F-110 intermediate maintenance to Capital Air Guard Station, IL, establishing a Centralized Intermediate Repair Facility (CIRF) at Capital for F110 engines.

Id., at 129-30.[1]

The Final Report was submitted to the President on or before September 8, 2005. The President must approve or disapprove, in their entirety, all of the Commission's recommendations. Act, § 2914(e)(1). The President approved the Report on September 15, 2005, and submitted the recommendations along with his certification of approval to Congress. Congress was authorized to enact a joint resolution of disapproval within forty-five days after receiving the President's certification. Id., § 2904. Because no such resolution was passed, the Act states that the Secretary is now required to carry out the recommended closures and realignments. Id.; see Dalton v. Specter, 511 U.S. 462, 464-65 (1994).

The 183d is part of the Illinois Air National Guard. As such, it is both a unit of a state National Guard, and part of the larger National Guard of the United States. See Rendell v. Rumsfeld, 2005 WL 2050295 (U.S. Dist. Ct. E.D.Pa., August 26, 2005) (detailed discussion of dual state-federal

---

[1] "ANG" stands for Air National Guard.

nature of the National Guard). The statutes defining the structure of this dual relationship give certain powers to the governors of the several states. The Governor argues that two of these statutes, 10 U.S.C. § 18238, and 32 U.S.C. § 104(c), require the federal government to secure his consent before realigning the 183d.[2]

The Governor notified the Secretary that he did not consent to the realignment of the 183d or the transfer of the Planes. The Governor, thus, argues that the Secretary cannot realign the Planes and the 183d as directed by the Final Report. The Governor asks for a declaratory judgment to that effect, and a permanent injunction. Amended Complaint (d/e 23), at 7.

## ANALYSIS

Upon reviewing the memoranda submitted by the parties, this Court

---

[2]Section 18238 states:
A unit of the Army National Guard of the United States or the Air National Guard of the United States may not be relocated or withdrawn under this chapter without the consent of the governor of the State or, in the case of the District of Columbia, the commanding general of the National Guard of the District of Columbia.

Section 104(c) states:
To secure a force the units of which when combined will form complete higher tactical units, the President may designate the units of the National Guard, by branch of the Army or organization of the Air Force, to be maintained in each State, the Commonwealth of Puerto Rico, the District of Columbia, Guam, and the Virgin Islands. However, no change in the branch, organization, or allotment of a unit located entirely within a State may be made without the approval of its governor.

noted that the Governor specifically stated that he is not seeking any relief under the Administrative Procedures Act (APA). <u>Plaintiff's Memorandum of Law in Response to Defendants' Motion to Dismiss and in Support of Plaintiff's Motion for Summary Judgement (d/e 64)</u>, at 16. The APA expressly waives the United States' sovereign immunity for actions brought under the APA. 5 U.S.C. § 702. Because the APA's waiver of sovereign immunity does not apply in this case, the Court directed the parties to address the basis on which the sovereign immunity of the United States is waived in this case. <u>Opinion entered May 23, 2007 (d/e 66)</u>, at 2-3. This Court has an obligation to inquire <u>sua sponte</u> whenever a doubt arises as to its subject matter jurisdiction. <u>Barichello v. McDonald</u>, 98 F.3d 948, 955 (7th Cir. 1996).

The Governor responded that sovereign immunity does not bar this action because the President and Secretary's action to realign the Planes and the 183d constitutes acts that are <u>ultra vires</u> the power delegated by Congress. <u>Memorandum of Law on the Question of Sovereign Immunity (d/e 67)</u>, at 3-4. As explained below, the President and the Defendants, including the Secretary, are not acting <u>ultra vires</u>. The Governor raises no other basis for a waiver or exception to the bar of sovereign immunity in this

7

case. Thus, the Governor's action is barred by sovereign immunity.

Generally, the United States is immune from suit in this Court unless it consents or waives its immunity. <u>Larson v. Domestic & Foreign Commerce Corp.</u>, 337 U.S. 682, 688 (1949). A suit against an officer or agent of the United States is considered a suit against the United States subject to the bar of sovereign immunity "if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" <u>Dugan v. Rank</u>, 372 U.S. 609, 620 (1963) (quoting <u>Land v. Dollar</u>, 330 U.S. 731, 738 (1947); and <u>Larson</u>, 337 U.S. at 704)(internal citations omitted). In this case, the Governor seeks declaratory and injunctive relief against the Secretary that would restrain the Government from realigning the 183d, and thereby, affecting both the public treasury and the administration of the Armed Forces. Thus, the action is an action against the United States subject to the doctrine of sovereign immunity, for purposes of the general rule.

There are two exceptions to the general rule of subjecting such actions to the bar of sovereign immunity. An action against an officer of the United States is not considered an action against the United States subject to

8

sovereign immunity if: (1) the officer is acting or intending to act <u>ultra</u> <u>vires</u> the power delegated by Congress; or (2) even if authorized, the officer's actions are constitutionally void. <u>Id.</u>, at 622.[3] The Governor does not assert that the Defendants' actions are constitutionally void. Rather, he asserts that the President and the Secretary are acting and intending to act <u>ultra</u> <u>vires</u> the power delegated by Congress. <u>Memorandum of Law on the Question of Sovereign Immunity (d/e 67)</u>, at 3-4.

The Defendants and the President are not acting <u>ultra</u> <u>vires</u> the power delegated by Congress. To act <u>ultra</u> <u>vires</u>, the agent must act with no authority whatsoever. A claim that the agent is improperly exercising a Congressional delegation of authority is not sufficient to invoke this exception to the bar of sovereign immunity. <u>Larson</u>, 337 U.S. at 690. As discussed above, Congress clearly authorized and directed the Secretary, the Commission and the President to conduct the base closures and realignment

---

[3] The Defendants argue that these exceptions to the United States' sovereign immunity were superceded by the 1976 amendments to the APA, codified as 5 U.S.C. § 702. <u>Defendant's Supplemental Response Concerning Sovereign Immunity (d/e 68)</u>, at 3-6. The Seventh Circuit has not directly addressed this issue, but has applied the <u>ultra</u> <u>vires</u> exception to sovereign immunity after the 1976 amendments to the APA. E.g., <u>Blaney v. United States</u>, 34 F.3d 509, 513-14 (7th Cir. 1994); <u>see</u> <u>Defendant's Supplemental Response Concerning Sovereign Immunity</u>, at 6, and cases cited therein. Because the Seventh Circuit continues to apply the <u>ultra</u> <u>vires</u> exception, this Court will assume this exception to sovereign immunity remains viable after the amendments to the APA.

process set forth in the Act. The Governor does not dispute this. Rather, the Governor states that the Act and §§ 104(c) and 18238 must be read together. According to the Governor, §§ 104(c) and 18238 add an additional step to the Act's base closure and realignment process: gubernatorial consent must be secured before a proposal subject to §§ 104(c) and 18238, such as the proposed realignment of the 183d, can be included in the Commission's final report. <u>Plaintiff's Memorandum of Law in Response to Defendants' Motion to Dismiss and in Support of Plaintiff's Motion for Summary Judgment (d/e 64)</u>, at 11. Presumably, under the Governor's reading of these statutes, the President must reject the Commission's Final Report if the Secretary or the Commission does not secure the appropriate governor's consent in such situations.

If the Governor's interpretation of the statutes is correct, then the Defendants and the President did not properly exercise the authority that Congress delegated to them in the Act because they did not comply with the additional step mandated by §§ 104(c) and 18238. However, an action taken by virtue of an improper exercise of authority is not the same as an action taken without authority whatsoever. The former is not <u>ultra vires</u> the power delegated by Congress. <u>Pennhurst State School & Hosp. v.</u>

10

Halderman, 465 U.S. 89, 102 n. 11 (1984); Larson, 337 U.S. at 690. The ultra vires exception to the general rule of sovereign immunity does not apply in this instance. The Governor sets forth no other basis for an exception to, or a waiver of, the bar of sovereign immunity. This Court, therefore, lacks jurisdiction to hear this case.

The Court also notes that the ultra vires exception to the bar of sovereign immunity does not apply in extraordinary circumstances when the relief sought, "would impose 'an intolerable burden on governmental functions, outweighing any consideration of private harm.'" Schlafly v. Volpe, 495 F.2d 273, 280 (7th Cir. 1974) (quoting Dugan, 372 U.S. at 620). In this case, the Governor asks this Court to enjoin the Secretary from realigning part of the Armed Forces of the United States and its aircraft during a time of war. To grant this relief clearly would impose an intolerable burden on the governmental functions of the United States. Thus, even if the Defendants were somehow acting ultra vires, this Court would still lack authority to interfere with the organization and administration of the Armed Forces of the United States.

THEREFORE, the Defendants' Motion to Dismiss (d/e 60) is ALLOWED. Plaintiff's Motion for Summary Judgment (d/e 63) is

DENIED.  This action is barred by the sovereign immunity of the United States.  This case is dismissed for lack of subject matter jurisdiction.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   July 25, 2007.

    FOR THE COURT:

                                      s/ Jeanne E. Scott
                                      JEANNE E. SCOTT
                              UNITED STATES DISTRICT JUDGE