IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ROD BLAGOJEVICH, Governor of the State of Illinois, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 05-3190 |
| ROBERT M. GATES, Secretary of Defense of the United States; ANTHONY J. PRINCIPI, Chairman of the Defense Base Closure and Realignment Commission; JAMES H. BILBRAY; PHILLIP E. COYLE; HAROLD W. GEHMAN, JR.; JAMES V. HANSEN; JAMES T. HILL; LLOYD W. NEWTON; SAMUEL K. SKINNER; and SUE ELLEN TURNER, members of the Defense Base Closure and Realignment Commission, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on the Plaintiff's motion for a temporary restraining order [d/e 77] and motion for a preliminary injunction [d/e 78]. Also pending are the Defendants' motion to dismiss [d/e 60] and the

Plaintiff's motion for summary judgment [d/e 63].

## I. BACKGROUND

This case concerns the 2005 Defense Base Closure and Realignment Commission's Report to the President and the Plaintiff's challenge to implementation of the recommendation that Capital Airport Air Guard Station be realigned and that the federally-owned F-16 fighter aircraft currently assigned to the Illinois Air National Guard's 183rd Fighter Wing at Capital Airport Air Guard Station be distributed to other locations. The Plaintiff is the Governor of Illinois. The Defendants include the Secretary of Defense of the United States and the Chairman and Members of the Defense Base Closure and Realignment Commission.

The parties state that roughly half of the planes at issue are scheduled to be moved by no later than June 30, 2008, with the others to be moved no later than September 30, 2008. Moreover, counsel for the Defendants has informed counsel for the Governor that at least one plane will be moved on June 10, 2008. Because of this timetable, the Governor has moved for injunctive relief and the parties have requested expeditious treatment of the

motions before the Court.

## II. RELEVANT STATUTES

The Governor relies primarily on two statutes. Section 104(c), Title 32, of the United States Code provides:

> To secure a force the units of which when combined will form complete higher tactical units, the President may designate the units of the National Guard, by branch of the Army or organization of the Air Force, to be maintained in each State. . . . . However, no change in the branch, organization, or allotment of a unit located entirely within a State may be made without the approval of its governor.

Another statute provides, in pertinent part, that "[a] unit of . . . the Air National Guard of the United States may not be relocated or withdrawn under this chapter without the consent of the governor of the State." 10 U.S.C. § 18238. The Governor contends the decision to move some aircraft assigned to the 183rd Fighter Wing of the Air National Guard from a base in Illinois to one in Indiana violates these statutes.

Congress enacted the Defense Base Closure and Realignment Commission Act of 1990, as amended, and provided that it shall be the exclusive authority of the Secretary of Defense to close or realign military

3

bases during the period covered by the Act. See 10 U.S.C. § 2687. The Governor alleges, moreover, that while Sections 2905(c) and 2905(e)(6) of the Defense Base Closure and Realignment Commission Act expressly supercede such other enactments as the National Environmental Policy Act of 1969 and the National Defense Policy Authorization Act of 1973, nothing in the Act purports to abrogate either section 104(c) or section 18238.

The Secretary of Defense, the principal Defendant[1] in this case, asserts that actions implementing a report of the Defense Base Closure and Realignment Commission do not require gubernatorial approval.

This action has previously been dismissed on the grounds that Plaintiff lacks standing to seek the relief sought and the Court lacked jurisdiction over the subject matter. The Seventh Circuit reversed the judgment in both instances, see Blagojevich v. Rumsfeld, 202 Fed. Appx. 924 (7th Cir. 2006);

---

[1] The Defendants note that the Commissioners cannot be parties because they stopped serving in an official capacity once the Commission expired. The Governor states that no injunctive relief is sought from the members of the Commission. Those Defendants have been retained "only insofar as they might be considered necessary parties under Rule 19(a) of the Federal Rules of Civil Procedure."

Blagojevich v. Gates, 519 F.3d 370 (7th Cir. 2008), and most recently remanded the case for a determination on the merits.

### III. ANALYSIS

#### A. Legal standard

"To prevail on a motion for a preliminary injunction, [the moving party] must show that (1) its case has a likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." FoodComm Intern. v. Barry, 328 F.3d 300, 303 (7th Cir. 2003) (citations omitted). If the moving party meets these conditions, courts must balance the harm to it if no injunction is issued against the harm to the non-moving party if it is. See id. "This balancing involves a sliding scale analysis: the greater [the movant's] chances of success on the merits, the less strong a showing it must make that the balance of harm is in its favor." Id. The same standards apply for the issuance of a temporary restraining order. See Caterpillar Inc. v. Walt Disney Co., 287 F. Supp.2d 913, 916 (C.D. Ill. 2003).

The Base Closure and Realignment Commission Act ("BRAC Act" or

"the Act") purports to give the Secretary of Defense the authority to close or realign the bases utilized by units of state militias when those units are not in the active service of the federal government or the bases which will be utilized by those troops when mustered out of federal service. The BRAC Act is silent regarding units of the National Guard of the states and the bases utilized by such units. See Bredesen v. Rumsfeld, 2005 WL 2175175, at *9 (M.D. Tenn. 2005).

B. Section 18238

The Governor further states that the Secretary of Defense's authority with respect to State Guard bases is derived from Chapter 1803 of Title 10. One of the purposes of the Chapter is "the acquisition, by purchase, lease, transfer, construction, expansion, rehabilitation, or conversion of facilities necessary for the proper development, training, operation, and maintenance of the reserve components of the armed forces, including troop housing and messing facilities." 10 U.S.C. § 18231(1). The Governor notes that the Secretary is authorized to acquire, construct, expand, convert, or equip facilities and to contribute funds for state facilities to be acquired, expanded,

rehabilitated, or converted.  See 10 U.S.C. § 18233(a).  The Secretary may "administer, operate, maintain, and equip" such facilities, see 10 U.S.C. § 18235(a)(1), so long as he does not permit a use which would interfere with "administering and training the reserve components of the armed forces."  10 U.S.C. § 18235(b)(1).  The Governor contends that if the Secretary acts to withdraw units housed at the Abraham Lincoln Capital Airport, he will be exercising authority derived from Chapter 1803.  No similar authority over the units and facilities of the Illinois Air National Guard is found in the BRAC Act.

The Governor notes that Defendants have asserted that the realignment concerns only equipment and that section 18238, which refers to a "unit," is inapplicable.  While the BRAC report anticipates that new missions might emerge which would incorporate existing personnel into a "Future Total Force," the Governor alleges that such a mission has not been forthcoming from the Air Force.  The BRAC report will result in a loss of approximately 600 positions, though about 450 different positions (with different ranks and skills) would be created.

The Governor emphasizes that section 18238 refers not to headcount or personnel, but to units. The 183rd Fighter Wing will be withdrawn under the BRAC report; it will cease to exist as a <u>unit</u> of the Air National Guard and the fact that new units will be created is irrelevant under the statute, according to the Governor. Whether existing personnel could be retrained for new jobs is also not relevant. The Governor contends, therefore, that unless injunctive relief is granted, a unit of the Air National Guard will be withdrawn without his consent, which is a violation of section 18238.

C. Section 104(c)

The Plaintiff contends that section 104(c) prohibits realignment of the 183rd Fighter Wing without the Governor's approval. The Governor disputes the Secretary's assertion that, because the first sentence of section 104(c) gives the President power to designate units of the National Guard by branch of the army or organization of the Air Force, the second sentence is only applicable when a change is made to the branch of the military which a National Guard Unit is affiliated.

The Governor alleges that by focusing exclusively on the first sentence, the Defendants would have the Court disregard the word "allotment" as unnecessary verbiage.[2]  However, statutes should be interpreted so that no word is rendered superfluous.  See Square D. Co. v. Commissioner of Internal Revenue, 438 F.3d 739, 745 (7th Cir. 2006).

The Governor states that the proviso did not appear in the first version of the statute.  It was added by the 1933 National Guard Bill.  See Rendell v. Rumsfeld, 2005 WL 2050295, at *16 (E.D. Pa. 2005), *vacated as moot*, 484 F.3d 236 (3d Cir. 2007).  The Governor contends that, in enacting this language, Congress indicated that it was concerned about a state being arbitrarily forced to accept a change in the allotment of a given unit after the state had gone to considerable expense to train and organize the unit.  A proviso does not always refer solely "to things covered by a preceding clause;" a proviso may also be employed "to state a general, independent rule."  See Alaska v. U.S., 545 U.S. 75, 106 (2005).

---

[2]The sentence reads, "However, no change in the branch, organization, or allotment of a unit located entirely within a State may be made without the approval of its governor."  32 U.S.C. § 104(c).

9

The Governor further asserts that it is inconsistent with the language of the statute and its legislative history to suggest that withdrawing or disbanding a unit of the National Guard does not make a change in the branch, organization or allotment of the unit.  The statute was enacted in 1933 as an apparent way of protecting states' rights and in "reserving to the States their right to control the National Guard or the Organized Militia absolutely under the militia clause of the Constitution in time of peace." See Rendell, 2005 WL 2050295, at *17 (quoting H.R. Rep. No. 73-141 at 5).

The Governor contends that, consistent with the history of this section, the Court should find that the proviso is not limited to changes in the branch of the military with which a unit is affiliated and, instead, also prohibits the Secretary from withdrawing or disbanding a unit without the approval of the governor.  See Rendell, 2005 WL 2050295, at *17 ("[W]e find, as a matter of law, that the Secretary's recommendation that the 111th Fighter Wing be deactivated without Governor Rendell's prior consent

violated Section 104(c).");³ see also Rell v. Rumsfeld, 389 F. Supp.2d 395, 401 (D. Conn. 2005) (rejecting Commission's argument that the history and purpose of the BRAC process has nullified the statutory mandate of gubernatorial consent to a reorganization and granting injunction, despite the fact that the text of the statute does not speak to relocation of aircraft); Bredesen v. Rumsfeld, 2005 WL 2175175, at *10-11 (noting that "the realignment decision derogated the statutory rights of the Governor, causing immediate and irreparable harm to his powers as Commander in Chief of the Tennessee Air National Guard").

D. The BRAC Act and Sections 18232 and 104(c)

Next, the Governor contends that the BRAC Act did not supercede or implicitly overrule the requirements of 10 U.S.C. § 18238 or 32 U.S.C. § 104(c). "[W]hen one statute deals with a subject in general terms and another statute, pertaining to the same subject, deals in a more detailed and specific manner, then the two should be harmonized if possible." Davis v.

---

³The Third Circuit would eventually vacate the district court's order and remand the cause with instructions that the district court dismiss the action on mootness grounds. See Rendell v. Rumsfeld, 484 F.3d 236, 243 (3d Cir. 2007).

Barber, 853 F.2d 1418, 1425 (7th Cir. 1988).

Citing Rendell, Bredesen and Rell, the Governor claims there is no irreconcilable conflict between the BRAC Act and the requirement in section 18238 that gubernatorial consent be obtained before units of the State Guard are included in the BRAC process. The Secretary of Defense could have sought the Governor's consent before issuing his recommendations. Moreover, the Commission could have sought such consent before issuing its report. Because neither section 104(c) nor section 18238 conflicts with the BRAC Act, therefore, the Governor claims those statutes should be given effect.

Moreover, the Governor claims it is evident that Congress did not intend to repeal 32 U.S.C. § 104 because that statute has been amended subsequent to the BRAC Act. See Pub. L. 109-163. Accordingly, Congress views the statute as remaining in force. Additionally, an intent to exempt BRAC realignments from the restrictions of sections 18238 and 104(c) cannot be inferred from the language of the BRAC Act. The Governor notes that when Congress intended to exempt BRAC closure and realignments

from other statutory enactments, it did so explicitly.  See Base Closure and Realignment Act of 1990 § 2905(b)(4)(F), § 2905(c) (Transfers of property shall not be subject to the Federal Property and Administrative Services Act; the provisions of the National Environmental Policy Act of 1969 shall not apply.)

### E. Irreparable injury

The Governor claims that the harm the State suffers will be irreparable because it cannot be remedied by a later award of damages.  The right to control the disposition of units of the Illinois Air National Guard is conferred by the Constitution of the State of Illinois and, according to the Governor, section 104(c).  By being denied the right to approve or disapprove any recommended changes in the makeup of the Air Guard, the Governor claims the State will suffer irreparable harm to its own interests. The Air National Guard is a valuable resource for the defense of the State. The Governor claims the State will be irreparably harmed in its ability to respond to homeland security threats, civil emergencies and natural disasters.

The Governor further states that if planes are transferred during the course of this litigation, it would be necessary to return them to the 183rd Fighter Wing if the Plaintiff prevails on the merits. This could pose logistical problems for the recipient bases and the prospect that the planes might be returned surely would impact the strategic planning and capabilities of the recipient units. The Governor notes the possibility that transferred fighter planes may be retired and irreparably damaged prior to return, costing the 183rd some of its assets. Additionally, the proposed realignment of the 183rd Fighter Wing would serve to generally impair the ability of the State to recruit and secure re-enlistment of citizens to serve in its Air National Guard.

The Governor states that in its pre-realignment configuration, the 183rd has pilots and flight crew for each of its planes. If the planes are transferred, that staff will no longer be needed and the 183rd will have to recruit and train new staff suited to its new, post-realignment mission. That recruitment and training will be unnecessary if the Governor prevails. Likewise, if the Governor prevails it would be unnecessary for the 183rd's

14

current flight crews to move to new positions in other units suited to their training and skills. The loss of personnel, inconvenience and expense associated with recruitment and training of personnel for a new mission that may not be needed is another irreparable injury to the State. The Governor alleges no action at law can afford relief from the injury which will be suffered.

The Court concludes that the Governor is unable to establish any irreparable injury that would result if the injunction is not granted. As the Defendants note, the Governor points primarily to the gradual movement of planes as the basis of irreparable harm. This process, which apparently began in March or April when at least one plane[4] was transferred, is scheduled to resume on June 10, 2008, and will not be completed until September 2008. The Defendants point out that the Governor has acknowledged that if Plaintiff prevails, then the planes can be returned. Thus, no irreparable harm would result.

---

[4]During the telephone conference on the Plaintiff's motion for a temporary restraining order and motion for a preliminary injunction, the parties informed the Court that one plane was moved in April and two were moved in May. The remaining fourteen planes will be moved by the end of September.

The other possible harms asserted by the Governor include "homeland security threats, civil emergencies, and natural disasters;" potential "logistical problems for recipient bases;" the possibility that "transferred fighter planes may be retired and irreparably damaged prior to return;" and it would "generally impair the ability of the State to recruit and secure reenlistment of citizens to serve in its Air National Guard." The Defendants correctly point out that these primarily are speculative injuries. "[A] plaintiff cannot obtain a preliminary injunction by speculating about hypothetical future injuries." East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co., 414 F.3d 700, 705-06 (7th Cir. 2005).

The Governor has not pointed to any imminent harm that will result if an injunction is not granted. The Defendants allege that the earliest that Plaintiff might be deprived of the use of the 183rd Fighter Wing would be after all of the planes depart after September 30, 2008. Moreover, the Defendants claim that as of May 2007, there was no recommendation that the 183rd be disbanded. In a declaration attached to the Defendants' brief in opposition to Plaintiff's motion for summary judgment, Major Steven A.

Mizak stated that Plaintiff's assertion that the 183rd would necessarily cease to exist because of the transfer of planes is incorrect. At that time, Major Mizak was reviewing various options and had not submitted to Air Force Headquarters any proposal to disband or inactivate the 183rd Fighter Wing. This appears to be the only evidence in the record pertaining to what might happen with the 183rd if the planes are moved.

## IV. CONCLUSION

Accordingly, the Court concludes the Governor is unable to show that the entry of an injunction is appropriate even if the Court assumes the Plaintiff is likely to succeed on the merits. The Governor has not shown that an irreparable injury will result if the injunction is not granted.

Ergo, the Plaintiff's motion for a temporary restraining order [d/e 77] and motion for a preliminary injunction [d/e 78] are DENIED. The Court will expeditiously consider the pending dispositive motions.

ENTER: June 10, 2008

        FOR THE COURT:

                      s/Richard Mills
                      United States District Judge